IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EQT PRODUCTION COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 14-1053 |
| ) | Hon. Nora Barry Fischer |
| TERRA SERVICES, LLC, ) | |
| ) | |
| Defendant/Third-Party Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| TRUMBULL CORPORATION and ) | |
| ENVIRONMENTAL CONSTRUCTION, ) | |
| INC., ) | |
| ) | |
| Third-Party Defendants ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

This is a diversity action in which Plaintiff EQT Production Company ("EQT") seeks to recover from Defendant Terra Services ("Terra") for damages stemming from leaks in a natural gas well site operated by EQT and constructed, in part, by Terra. Terra has filed a third-party Complaint for contribution and common law indemnity against two other contractors that EQT hired to complete various phases of the site's construction, Trumbull Corporation ("Trumbull") and Environmental Construction ("ECI"). (Docket No. 160). ECI in turn, filed identical cross-claims against Trumbull. (Docket No. 182). Currently pending before the Court are Trumbull's Motions to Dismiss Terra's third-party Complaint and ECI's cross-claims. The relevant parties have all submitted briefing, (Docket Nos. 168, 179, 185, 190-91, 195, 197), and the Court heard oral argument on the Motions on January 29, 2016, with counsel for all parties present, (Docket

1

No. 200). The Motions are now ripe for disposition. After careful consideration of the parties' positions and having evaluated the relevant standard and legal authority, for the following reasons Trumbull's Motions [167] and [189] are granted and the claims against it are dismissed.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

From 2010-2012, EQT developed a natural gas well site in Tioga County, Pennsylvania. (Docket No. 1-3 at ¶¶ 3, 13). As part of the development, EQT constructed a large reserve water impoundment (the "S-Pit") to temporarily contain fluids generated by the well drilling and hydraulic fracturing. (*Id*. at ¶¶ 14-16). Through separate contracts, EQT hired three contractors to construct and service the S-Pit. (*Id*. at ¶¶ 14-16; Docket No. 160 at ¶¶ 22-29). Trumbull excavated the site and prepared the subgrade.[1] (Docket No. 160 at ¶¶ 22-24). ECI then installed the geotextile and the geomembrane liner in the S-Pit. (*Id*. at ¶¶ 25-29). Subsequently, Terra designed and installed a system to suction out, treat, and return fluids back into the S-Pit. (Docket No. 1-3 ¶¶ 14, 20). Terra's work lasted from around April 18, 2012 through April 30, 2012. (*Id*. at ¶¶ 19-21). Once constructed, the S-Pit measured approximately 265 feet by 305 feet, was 16.7 feet deep, and could hold an estimated 5,241,300 gallons of water. (*Id*. at ¶ 15). Sometime after construction, fluids began to leak into the ground through several hundred holes in the S-Pit liner. (*Id*. at ¶¶ 23-28). As a result, the Pennsylvania Department of Environmental Protection (the "DEP") and an adjacent landowner, Danzer Forestland, Inc. (the "landowner") are seeking to hold EQT responsible for environmental contamination in separate legal proceedings not before this Court. (Docket No. 179 at 1).

---

[1] Trumbull avers that at the time it contracted with EQT, the S-Pit was supposed to be a freshwater impoundment and that EQT's decision to use the S-Pit for other purposes came after Trumbull finished its work. (Docket No. 185 at 7).

A. *EQT's Complaint Against Terra*

EQT filed the present lawsuit against Terra only, alleging that Terra is solely responsible for the holes in the liner. (Docket No. 1-3 at ¶¶ 26-31) ("The holes in the geomembrane liner were directly and proximately caused by Terra Services' failure to conduct its Water Treatment Work in a proper and workmanlike manner pursuant to its agreement with EQT Production."). According to EQT, the holes in the liner were found "in the location where Terra Services had placed its suction and return lines during the performance of its Water Treatment Work." (*Id*. at ¶ 26). EQT goes on to allege in its Complaint that Terra's "improper, unworkmanlike and defective" work subjected EQT and its well site to remedial obligations to the DEP and the adjacent landowner. (*Id*. at ¶¶ 28-30).

EQT avers that its Master Services Agreement ("MSA")[2] with Terra required Terra to "furnish its best skill and judgement in the discharge of its obligations and to complete its Water Treatment Work in a good, workmanlike, safe, expeditious and economic manner." (*Id*. at ¶ 7). EQT further alleges that the MSA: required Terra to use skill and judgment customary to the trade and complete its work free from defects; contained an express warranty "against all deficiencies and defects in materials and/or workmanship"; contained an agreement that Terra "would not cause or permit a violation of, or perform its [work] in a manner that would subject [the well site] to, any remedial obligations under any local, state or federal environmental laws"; and provided that in the event Terra's performance did result in the violation of any laws, that Terra agreed to indemnify EQT "from any and all costs and damages arising from any such violations . . ." (*Id*. at ¶¶ 8-11). EQT brings claims against Terra for breach of contract (Count

---

[2] The Court notes that for confidentiality purposes, the parties have not provided the Court with copies of any of the contracts involved in this case. (*See* Docket No. 160 at 3 n. 2). However, in briefing and at oral argument the parties did not dispute the existence of the contracts or the relevant terms as alleged in either Complaint.

I), breach of express warranty (Count II), contractual indemnification (Count III), and in the alternative, common law indemnification (Count IV). (*Id*.).

B. *Terra's Third-Party Complaint*[3]

More than a year after EQT commenced this lawsuit, Terra filed a third-party Complaint against Trumbull and ECI, bringing claims for contribution and common law indemnity. (Docket No. 160). Specifically, Terra alleges that Trumbull left sharp rocks and debris at the bottom of the S-Pit and that ECI improperly installed the geotextile and liner, causing the rocks to poke holes in the liner. (*Id*. at ¶¶ 37-41). At oral argument, counsel for Terra indicated that the ongoing discovery between EQT and Terra has revealed evidence, including photos and testimony, proving that sharp rocks and debris were left in the S-Pit and that inspection of the liner showed that the holes were poked up through the liner from the ground rather than down through the liner. (Tr. 15:23-16:8, 29:1-30:16) ("it's very clear it was the sharp rocks beneath the liner that caused the holes in that liner and it had nothing to do with Terra's performance of services.").

Terra's third-party Complaint also alleges that Trumbull and ECI's respective contracts with EQT set forth that Trumbull and ECI both agreed: to perform their duties in a "good, workmanlike, safe, expeditious and economic manner"; to use skill and judgment customary to the trade and complete their work free from defects; that they would not "cause or permit a violation of, or perform [work] in a manner that will subject [the well site] to any remedial obligation under any local, state or federal environmental laws"; and provided that in the event Trumbull's or ECI's performance did result in the violation of any laws, that they each agreed to indemnify EQT from any and all costs and damages arising from their performance under their

---

[3] For the purposes of a Motion to Dismiss, the Court assumes as true the factual allegations in Terra's third-party Complaint. *Connelly v. Lane Const. Corp.,* 809 F.3d 780, 790 (3d Cir. 2016).

respective contracts. (Docket No. 160 at ¶¶ 8-12, 17-21). It is also averred that Trumbull agreed to notify EQT immediately if the conditions of the surface and subsurface were such that work could not continue. (*Id*. at ¶ 10). Similarly, ECI agreed that it would inspect all surfaces prior to installing the liner, not to commence work "until deficiencies and other surface/subsurface conditions that would adversely affect the integrity" of ECI's work had been corrected, and to immediately notify EQT if any such conditions existed. (*Id*. at ¶ 19).

Terra alleges that Trumbull's and ECI's "improper, unworkmanlike, and defective" work subjected the well site to the remedial obligations in the form of liability to the DEP and the adjacent landowner. (*Id*. at ¶¶ 37-41). With regard to its contribution claims, Terra's third-party Complaint avers "[i]f EQT suffered any damages as alleged, which is denied, to the extent Terra is determined to be liable to EQT, such damages were caused by reason of the joint negligence, carelessness, recklessness, and breaches of contract, by Third Party Defendant Trumbull [and/or ECI] . . ." (*Id*. at ¶¶ 43, 52). With respect to its common law indemnity claims, Terra avers that "[t]o the extent Terra is deemed responsible for the asserted damages alleged by EQT, said responsibility is secondary in nature." (*Id*. at ¶¶ 49, 58).

ECI answered Terra's third-party Complaint and filed cross-claims against Trumbull, also seeking contribution and common law indemnity. (*See* Docket No. 182). ECI's cross-claims incorporate by reference the allegations of negligence against Trumbull as contained in Terra's third-party Complaint. (*Id*.). Trumbull's Motions to Dismiss are now before the Court. (Docket Nos. 167, 189).

### III. OVERVIEW OF THE MOTIONS TO DISMISS

Both Trumbull and ECI agree that the issues presented in the Motion to Dismiss Terra's third-party Complaint mirror the issues with respect to Trumbull's Motion to Dismiss ECI's

5

cross-claims. (Docket Nos. 190 at 2; 195 at 2-3). For the sake of brevity and because the majority of the briefing and argument occurred between Trumbull and Terra, the Court will generally refer to that Motion. The same analysis and conclusions apply to Trumbull's Motion to Dismiss ECI's cross-claims as well.

Trumbull argues essentially that its and Terra's respective liability to EQT, if any, is contractual in nature. This would mean Terra has failed to state claims against Trumbull for contribution and common law indemnity since under Pennsylvania law both types of actions are available only for liability that sounds in tort and not for breach of contract. Trumbull also argues that under the facts as alleged in both Complaints, Terra cannot make out the elements of its common law indemnity claim. In reply, Terra argues that EQT has alleged a tort claim against it in the form of EQT's common law indemnity claim; hence, Terra asserts it is potentially liable for damages resulting from the negligence of Trumbull and ECI and thus should be allowed the benefit of having them in this lawsuit. (Docket No. 179 at 6-7); (Tr. 28:7-33:7).

### IV. LEGAL STANDARDS

#### A. *Motion to Dismiss Standard*

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R .CIV. P. 8(a)(2). To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The United States Supreme Court in *Iqbal* clarified that its decision in *Twombly* "expounded the pleading standard for 'all civil actions.'" *Iqbal*, 556 U.S. at 684. The Supreme

Court further explained that even though a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Id*. at 678–79. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, "[a]lthough a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Connelly v. Lane Const. Corp.,* 809 F.3d 780, 790 (3d Cir. 2016) (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n. 1 (3d Cir.2014)). The facial plausibility requirement is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556–57) (internal citations omitted). Furthermore, the determination as to whether a complaint contains a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

In light of *Iqbal*, the United States Court of Appeals for the Third Circuit has instructed that district courts should first separate the factual and legal elements of a claim, and accepting the "well-pleaded facts as true," then should "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 679). The matter for this Court's determination is not whether the pleading party ultimately will prevail on the

claim, but rather whether that party is entitled to offer evidence in support of it. *United States ex rel. Wilkins v. United Health Grp.*, 659 F.3d 295, 302 (3d Cir. 2011). Accordingly, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). As part of this task, this Court must "identify those allegations that, being merely conclusory, are not entitled to the presumption of truth." *Connelly*, 809 F.3d at 789. The Court is mindful that to meet the standard a plaintiff "need only put forth allegations [of fact] that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.2d at 213 (internal quotations omitted); *see also Connelly*, 809 F.3d at 791.

B. *Rule 14*

Federal Rule of Civil Procedure 14 provides: "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." FED. R. CIV. P. 14(a)(1). Therefore, in order for a third-party claim to be valid, there must be a basis for liability between the third-party defendant and the defendant/third-party plaintiff. *See* C. Wright, A. Miller, & M. Kane, 6 Fed. Prac. & Proc. Civ. § 1446 (3d ed.) ("A third-party claim may be asserted under Rule 14(a)(1) only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defending party."). A defendant may not bring in a third-party that is solely liable to the plaintiff. *See e.g.*, *Herndon Borough Jackson Twp. Joint Mun. Auth. v. Pentair Pump Grp., Inc.*, No. 4:12-CV-01116, 2015 WL 2166097, at *2 (M.D. Pa. May 8, 2015); *O'Mara Enterprises, Inc. v. Mellon Bank, N.A.*, 101 F.R.D. 668, 670 (W.D. Pa. 1983).

"Where . . . state substantive law recognizes a right of contribution and/or indemnity, impleader under Rule 14 is the proper procedure by which to assert such claims." *In re One*

*Meridian Plaza Litig.,* 820 F.Supp. 1492, 1496 (E.D. Pa. 1993) (citing *Smith v. Whitmore,* 270 F.2d 741 (3d Cir. 1959). As Rule 14 only provides the procedural mechanism for filing a third-party complaint, a party's substantive rights to contribution and common law indemnity are determined by state law. *Herndon Borough*, 2015 WL 2166097, at *2. "In general, whether a particular third-party defendant may be impleaded is a question which 'rests with the sound discretion of the trial court.'" *State Coll. Area Sch. Dist. v. Royal Bank of Can.,* 825 F.Supp.2d 573, 379 (M.D. Pa. 2011) (quoting *Hartford Casualty Ins. Co. v. ACC Meat Co.,* 2011 WL 398087, at *1 (M.D. Pa. Feb.2, 2011)).

    C. *Contribution*

Contribution "is not a recovery for the tort, but rather it is the enforcement of an equitable duty to share liability for the wrong done by both." *Swartz v. Sunderland,* 169 A.2d 289, 290 (Pa. 1961). The right of contribution under Pennsylvania law is governed by the Pennsylvania Uniform Contribution Among Tortfeasors Act. 42 Pa. C.S. §§ 8322-8327. Under this statute, contribution is only available among joint tortfeasors. 42 Pa. C.S. § 8324(a); *Bank v. City of Philadelphia*, 991 F.Supp.2d 523, 538 (E.D. Pa. 2014); *see also Travelers Indem. Co. v. Stengel*, 512 Fed.App'x 249, 251 (3d Cir. 2013). The Act defines joint torfeasors as "two or more persons jointly or severally liable *in tort* for the same injury to persons or property . . ." 42 Pa. C.S. § 8322 (emphasis added). Accordingly, contribution is not available for breach of contract claims. *See e.g.*, *Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 552 F.Supp.2d 515, 520 (E.D. Pa. 2008); *Unique Techs., Inc. v. Micro Stamping Corp.*, No. CIV.A. 02-CV-6649, 2003 WL 21652284, at *3 (E.D. Pa. Apr. 15, 2003); *Higgins Erectors & Haulers, Inc. v. E.E. Austin & Son, Inc.*, 714 F.Supp. 756, 759 (W.D. Pa. 1989); *Atchison Casting Corp. v. Deloitte & Touche, LLP*, 2003 WL 1847665, at *3 (Pa. Com. Pl. Mar. 14, 2003).

D. *Common Law Indemnity*

Unlike the right of contribution, common law indemnity is an "equitable remedy that shifts the entire responsibility for damages from a party who, without any fault, has been required to pay because of a legal relationship to the party at fault." *City of Wilkes-Barre v. Kaminski Bros.*, 804 A.2d 89, 92 (Pa. Commw. Ct. 2002). "Common law indemnity is not a fault-sharing mechanism that allows a party, whose negligence was minor, to recover from the tortfeasor whose negligence was dominant. It is a fault-shifting mechanism that comes into play when a defendant held liable by operation of law seeks to recover from a defendant whose conduct actually caused the loss." *Id*. It "is appropriate when a defendant's liability 'arises not out of its own conduct, but out of a relationship that legally compels the defendant to pay for the act or omission of a third party." *Bank*, 991 F.Supp.2d at 530 (quoting *Morris v. Lenihan*, 192 F.R.D. 484, 489 (E.D. Pa. 2000)). The touchstone of common law indemnity is the notion of secondary liability on the part of the party seeking indemnity:

> But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible.

*Builders Supply Co. v. McCabe*, 77 A.2d 368, 371 (1951). Like contribution, common law indemnity is only available for liability sounding in tort and is not available for breach of contract. *See e.g.*, *E. Elec. Corp. of N.J. v. Rumsey Elec. Co.*, No. CIV.A. 08-5478, 2010 WL 2788294, at *2 (E.D. Pa. July 14, 2010); *Higgins*, 714 F. Supp. at 759.

E. *Gist of Action Doctrine*

"Under Pennsylvania law, the gist of action doctrine maintains the conceptual distinction between contract law and tort law." *Gadley v. Ellis*, No. CIV.A. 3:13-17, 2015 WL 2345619, at

10

*6 (W.D. Pa. May 15, 2015). The doctrine seeks to prevent plaintiffs from repackaging breach of contract claims as tort claims. The Supreme Court of Pennsylvania recently clarified the appropriate analytical framework for applying the gist of action doctrine. *See Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2014). Justice Todd's opinion in *Bruno* explained that gist of action analysis is a fact specific inquiry and that "duty-based demarcation" is the "touchstone standard" in evaluating the gist of the claims at issue. *Id*. at 69. In other words, courts must look at where the duty allegedly breached originates.

V.     DISCUSSION

Terra's third-party claims, as against Trumbull, and ECI"s cross-claims fail. First, the facts of the case, as pled, do not support recovery on a common law indemnity claim. Second, after careful review of Terra's third-party Complaint, it is clear that Trumbull's potential liability, if any, to EQT would stem from their contract. The conclusion that Trumbull's potential liability is contractual in nature requires dismissal of both Terra's contribution and common law indemnity claims against Trumbull. The Court will discuss each of these issues, in turn.

    A. *Terra Cannot Recover Using Common Law Indemnity*

Trumbull argues Terra's common law indemnity claim fails on the grounds that there is no possible legal basis that would result in Terra being held liable for negligence committed exclusively by Trumbull. (*See* Docket No. 185 at 8-10) ("there simply is no scenario under which a jury could determine that Trumbull's work caused the holes, but hold Terra legally responsible"). While it does not concede the argument, Terra does not provide any legal basis to

counter it.[4] (*See* Docket No. 191 at 4-5). The Court finds this argument compelling.

Common law indemnity is not available to a joint tortfeasor or a party whose negligence contributed to the injury at issue. *See Bank*, 991 F.Supp.2d at 530 ("the party seeking common law indemnity must demonstrate that there was no active fault on his own part"); *see also City of Wilkes-Barre*, 804 A.2d at 92 ("Common law indemnity is not a fault-sharing mechanism that allows a party, whose negligence was minor, to recover from the tortfeasor whose negligence was dominant.") Thus, in order to succeed on common law indemnity, Terra would have to prove not only that Trumbull was at fault, but that Terra was not. If Terra were to ultimately succeed at proving this, Trumbull's negligence would provide Terra a full defense from liability to EQT. Terra and Trumbull do not have a special legal relationship of any kind that would result in secondary liability for Terra for the harm caused by Trumbull's negligence. The Court cannot imagine, and Terra has not offered, a single scenario in which Terra could be held liable to EQT for Trumbull's negligence, where Terra is found to have had no active fault of its own. Therefore, if Terra's negligence contributed to the holes in the liner in any way, common law indemnity is unavailable. If it did not, Terra would prevail against EQT and not have any liability for Trumbull to indemnify. *See Unique Techs., Inc.*, 2003 WL 21652284, at *3 (third-party claim for common law indemnity failed because the defendant would either prevail against the plaintiff or be found to have some degree of fault). Thus, Terra has not stated a claim for common law indemnity.[5]

---

[4] Terra argues that Trumbull raised this argument for the first time in its Reply and the Court should not consider it. (Docket No. 191 at 4-5 n. 5). Review of Trumbull's initial Brief reveals that this is simply not the case. (*See* Docket No. 168 at 10-12).

[5] Although it does not dismiss the contribution claim on this basis, the Court notes that it is also not clear whether Terra has adequately pled facts that would support recovery on its contribution claim. Unlike common law indemnity, contribution is exclusively available for joint tortfeasors. 42 Pa. C.S. § 8324(a). Parties are joint tortfeasors when they both contributed to the same injury and can be held jointly and severally liable. 42 Pa. C.S. § 8322. In its pleadings and at oral argument, Terra generally lays all of the blame with Trumbull and ECI. Again, if

B. *The Basis for Trumbull's Liability to EQT, if any, Is Contractual*

Trumbull takes the position that (1) EQT has only sued Terra in contract; and (2) Trumbull's liability to EQT, if any, would be based on actions covered by its contract with EQT. (*See generally* Docket Nos. 168, 185). As noted above, and undisputed by Terra, if either of these situations are true, Terra's third-party claims fail because both common law indemnity and contribution claims must be grounded in tortious conduct. (*See* Docket No. 179 at 4) (acknowledging that both of its claims "must be grounded in tortious conduct"). Further, the Federal Rules do not allow a defendant to file third-party claims premised only upon the third-party's liability to the plaintiff. FED. R. CIV. P. 14(a)(1). After close examination of Terra's third-party Complaint, the Court concludes that Trumbull's potential liability to EQT, if any, would be contractual in nature.

Terra's third-party claims fail, regardless of its own liability to EQT, because it is evident from the face of Terra's third-party Complaint that Trumbull's liability to EQT, if any, would be through its contract with EQT. Perhaps tellingly, Terra itself spends much of its third-party Complaint detailing Trumbull's and ECI's contracts with EQT. Terra's allegations regarding Trumbull's failures fall squarely within Terra's own description of Trumbull's contractual obligations to EQT. As alleged by Terra, the contract between EQT and Trumbull provides that Trumbull would perform its work in a "workmanlike" and "safe" manner, free from defects. (Docket No. 160 at ¶¶ 8-12). Trumbull also agreed that it would not "cause or permit a violation

---

the fault lies entirely with Trumbull and/or ECI, that would provide Terra with a complete defense to liability from EQT and there would be nothing towards which Terra could seek contribution. Terra would only be able to receive contribution from Trumbull if Terra and Trumbull were found to be joint tortfeasors. Despite being able to describe in detail how Trumbull and ECI allegedly contributed to the S-Pitt leaks, Terra does not explain exactly how it may be found to be a joint tortfeasor along with Trumbull and/or ECI. Terra states only that "there are any number of conceivable outcomes in which Terra could be held jointly and severally liable, but not wholly responsible, for the environmental response costs" and argues it need not be more specific at the pleading stage. (Docket No. 179 at 10-11).

13

of, or perform [work] in a manner that will subject [the well site] to any remedial obligation under any local, state or federal environmental laws" and to indemnify EQT if its performance resulted in any such remedial obligations. (*Id*.). After detailing these obligations, Terra avers "Trumbull's *improper*, *unworkmanlike* and *defective* construction services provided at the S-Pit *subjected* the [well site] to *remedial obligations* under [various environmental laws]." (*Id*. at ¶ 39) (emphasis added). Thus, taking as true the allegations in Terra's third-party Complaint, both Trumbull's allegedly "improper, unworkmanlike and defective" work and its responsibility to avoid and indemnify EQT for the remedial obligations to the DEP and the adjacent landowner would be governed by the contract.

In Pennsylvania, where there is a written indemnity agreement between the parties, common law indemnity is not available. *Fid. Nat. Title Ins. Co. v. B & G Abstractors, Inc.*, No. 2:15-CV-835, 2015 WL 6472216, at *10 (W.D. Pa. Oct. 27, 2015) ("[T]he Pennsylvania Supreme Court has held that where 'there is a written contract setting forth the rights and duties of the parties,' the terms of the contract, rather than common law principles of indemnity, govern.") (citing *Eazor Express Inc. v. Barkley*, 272 A.2d 893, 895 (Pa. 1971)); *Bracken v. Burchick Const. Co.*, No. 1432 WDA 2012, 2014 WL 10790110, at *7 (Pa. Super. Ct. Oct. 10, 2014) ("Common law indemnity concerns are irrelevant to our determination here since the parties entered into a written contract of indemnity that specifically sets forth the rights and duties of each party to the contract."). Where there is no dispute that "the parties' Agreement covers the issue of indemnity," the claim "must live or die under the terms of the Agreement." *Fid. Nat. Title Ins. Co.*, 2015 WL, at *10. The indemnity provision of EQT's contract with Trumbull would therefore mean that the only way Trumbull could be liable to EQT for EQT's liability to the DEP and the landowner is through their contract.

14

Even if the Court found EQT's common law indemnity claim to constitute a tort claim against Terra, Terra's attempt to pass that tort liability onto Trumbull fails through application of the gist of action doctrine. It is true that "the mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract." *Bruno*, 106 A.3d at 69-70 (citations omitted). Terra cites *Gambo v. Commonwealth of Pennsylvania*, No. 04 CV 3318, 2005 WL 4346598, at *1 (Pa. Comm. Ct. Aug. 26, 2005), where the liability for pollution stemming from the negligent storage of chemicals was found to sound in tort despite the existence of a contract between the parties. However, the facts in *Gambo* are distinguishable. In that case, PennDOT leased land from private individuals on which it stored various chemicals. As a result of allegedly negligent storage by PennDOT, the chemicals leaked into the ground causing property damage and unsafe conditions. *Id*. at *1-2. The Commonwealth Court held that the private landowners' suit was not contractual under the gist of action doctrine because the complaint did not seek damages for, or enforcement of, any terms of the lease, but rather for various torts. *Id*. at *3.

Unlike the contract in *Gambo*, which was simply a lease agreement for the use of the land, the MSA between EQT and Trumbull expressly obligated Trumbull to avoid the type of harm Terra alleges that Trumbull caused. Trumbull was contractually obligated to perform its work in a "workmanlike" and "safe" manner, free from defects. (Docket No. 160 at ¶¶ 8-12). Terra alleges "Trumbull's *improper*, *unworkmanlike* and *defective* construction services" caused the damages at issue in this case. (*Id*. at ¶ 39) (emphasis added). Terra also notes that Trumbull specifically agreed to notify EQT immediately if the conditions of the surface and subsurface were such that work could not continue. (*Id*. at ¶ 10). This is precisely what Terra alleges

15

Trumbull failed to do when it allegedly left sharp rocks and debris at the bottom of the S-Pitt, overtop of which ECI subsequently installed the liner. If Trumbull has any liability to EQT, it is through failures of performance clearly covered by their contract. *See e.g., Higgins*, 714 F. Supp. at 759 (dismissing fifth-party complaint where although "couched in negligence terms, it is actually based upon an alleged breach [of contract]"); *Bruno*, 106 A.3d at 69 (gist of claims determined by the origin of the duty at issue); *Fid. Nat. Title Ins. Co.*, 2015 WL, at *10 (common law indemnity not available when there is a written indemnity agreement). Accordingly, application of Pennsylvania's gist of action doctrine would render any tort claim brought against Trumbull contractual in nature. *See Bruno*, 106 A.3d at 69 (explaining that the origin of the duty allegedly breached is the "touchstone standard" in evaluating the gist of the claims at issue).

Since Trumbull's only potential liability to EQT would be contractual, it cannot be liable to Terra for common law indemnity or contribution, as both claims are available only for tort liability. If Trumbull cannot be held liable *to Terra*, Terra cannot join Trumbull in this lawsuit. FED. R. CIV. P. 14(a)(1).

Trumbull also argues, for the same reasons, that Terra's potential liability to EQT is only contractual. EQT's Complaint brings four claims against Terra. (Docket No. 1-3). Counts I, II, and III – breach of contract, breach of express warranty, and contractual indemnification – are clearly contract claims. Terra bases its third-party claims against Trumbull on Count IV of EQT's Complaint, which brings a claim, in the alternative, against Terra for common law indemnity. (Docket No. 179 at 4) (citing Docket No. 1-3 at ¶¶ 53-59). Terra's argument is essentially that since common law indemnity is only available for tort liability, on its face, EQT's Count IV necessarily attempts to pass EQT's potential tort liability onto Terra. (*Id*.). According to EQT's Complaint, Terra agreed to perform its work in a "safe" and "workmanlike"

16

manner that was free from defects. (Docket No. 1-3 at ¶¶ 8-11). Terra also agreed that it would not perform its work in such a way that resulted in remedial obligations for violations of environmental laws and to indemnify EQT in the event that it did cause such remedial obligations. (*Id*.). After laying out the terms of the MSA, EQT alleges that Terra's "improper, unworkmanlike and defective" work subjected EQT and its well site to remedial obligations to the DEP and the adjacent landowner. (*Id*. at ¶¶ 28-30). As Trumbull's argument goes, both Terra's allegedly "improper, unworkmanlike and defective" work and its responsibility to avoid and indemnify EQT for the remedial obligations to the DEP and the adjacent landowner appear to be governed by the MSA. Because Terra answered EQT's Complaint, including the common law indemnity claim which remains a part of the lawsuit, and because the Motions to Dismiss will be granted regardless, the Court need not determine the validity of EQT's common law indemnity claim against Terra at this time.[6]

The Court agrees with Terra that it is peculiar that EQT did not also sue Trumbull and ECI in the first place. Nevertheless, the Federal Rules of Civil Procedure do not permit, and Pennsylvania law does not support, Terra's third-party Complaint under the present circumstances. As already noted, however, if Terra can prove at trial that the fault for the holes in the liner lies with Trumbull, it will provide Terra a defense from liability to EQT.

VI. **CONCLUSION**

For the foregoing reasons, the Court finds Trumbull cannot be held liable for contribution or common law indemnity to either Terra or ECI. Trumbull's Motions [167] and [189] will be granted and Terra's third-party Complaint, as against Trumbull, and ECI's cross-claims will be

---

[6] Likewise, because there are other grounds for dismissal, the Court does not decide the novel issue of Pennsylvania law raised by the parties as to whether a claim for common law indemnity against a defendant for tort *liability* is sufficient for the defendant to seek indemnity and contribution from third parties, rather than the more common example where the plaintiff has actually brought tort claims directly against the defendant.

17

dismissed, with prejudice.

An appropriate order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: April 12, 2016

cc/ecf: All counsel of record